**STEVAN JOHNSON**
Post Office Box 170151
Boston, Massachusetts 02117

<u>Via E-mail</u>

The Honorable Douglas P. Woodlock
United States District Court                              November 21, 2016
1 Courthouse Way, Courtroom 1
Boston, Massachusetts 02210
c/o barbara_beatty@mad.uscourts.gov

RE:   **USA *v.* E J T Management, Inc.,**
      16-cr-10225-DPW

Dear Honorable U.S. District Judge Woodlock:

Being a victim of the "New Car Premium" scheme under of J Z TAXI, INC., this Court is being informed about the belief that defendant E J T MANAGEMENT, INC. ("**E J T**") is conducting the business affairs of more than thirty (30) Massachusetts corporations in a manner believed to be forbidden by the Thirteenth (13th) Amendment to the Constitution of the United States.  Namely, **E J T** is alleged to be participating in an ongoing labor trafficking conspiracy in violation of the Victims of Trafficking and Violence Protection Act of 2000, as amended.  <u>See</u>: *Pub. L. 106-386*; *114 Stat. 1464*, October 28, 2000. Therefore, this Honorable Court is shown the following:

1.      **E J T** is the eponymous founded by defendant Edward J. Tutunjian.

2.      **E J T** has contractual agreements with more than thirty (30) Massachusetts taxicab corporations ("Boston Cab cartel") licensed by the Police Commissioner of the City of Boston to provide taxicab service within the city limits of Boston.  *See* St. 1930, c. 392 § 4.  **E J T** uses the aforementioned agreements to consolidate management of more than three-hundred (300) vehicles known as hackney carriages ("taxicabs"), which are all registered to owners in the Boston Cab cartel.

3.      A result of **E J T** forming the Boston Cab cartel by combining more than thirty (30) management agreements is **E J T** has been bound since August 29, 2008, based on an obligation to the City of Boston, to purchase new vehicles to put into service as taxicabs, pursuant to Boston Police Department Rule 403 ("Rule 403").  *See* Rule 403 § 3(II)(a).

4.      Based on the financial obligation imposed upon the Boston Cab cartel under Rule 403 § 3(II)(a), the City of Boston permits **E J T** to pass on the cost of purchasing new vehicles put into service as City of Boston licensed taxicabs, thru a "New Car Premium" **E J T** charges City of Boston taxicab drivers.

5.      **E J T** has exacted more than fifteen million dollars ($15,000,000.00) in "New Car Premiums." Since August 29, 2008 the Boston Cab cartel has used **E J T** to charge hundreds of predominately colored/immigrant City of Boston taxicab drivers "New Car Premiums" for us to be permitted to work.

6.      **E J T** has not purchased any accessible vehicles to put into service as taxicabs which would have increased the total number City of Boston wheelchair accessible taxicabs, readily available for use by individuals with qualified disabilities under the ADA --- all while reaping millions of dollars from drivers forced *to pay* "New Car Premiums" to work based on being branded "independent contractors" systematically deprived of the right *to be paid* a "free and clear" wage pursuant to the FLSA, for performing the essential labor of driving vehicles owned by the Boston Cab cartel which operate in the demand responsive taxicab system providing public transportation within the city limits of Boston.

7.     Under Section 224 of Title II of the Americans with Disabilities Act of 1990 ("ADA"), if a public entity such as the City of Boston operates a demand responsive system, it shall be considered discrimination for the City of Boston to purchase a new vehicle after **August 25, 1990** for use on such system that is not readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs. *See* 42 U.S.C. § 12144.

8.     Under the ADA the term "operates", as used with respect to a demand responsive system, includes operation of such system by a person under a contractual or other arrangement or relationship with a public entity. *See* 42 U.S.C. §12141(4).

9.     Further, under the ADA the term "demand responsive system" means:

    (i)     "any system of providing designated public transportation which is not a
            fixed route system" under Section 221(1) of Title II of the ADA; and
    (ii)    "any system of providing transportation of individuals by a vehicle, other
            than a system which is fixed route" under Section 301(3) of Title III of the ADA.

*See* 42 U.S.C. §§ 12141(1) and 12181(3).

10.    Under Section 37.23 of Title 49 of the Code of Federal Regulations, it appears that a private entity such as **E J T** which purchases vehicles for use or contemplation of use, by the Boston Cab cartel, in demand responsive service under a contract or other arrangement or relationship with a public entity (such as the City of Boston), **shall** acquire accessible vehicles in all situations in which the public entity itself would be required to do so. *See* 49 C.F.R. § 37.23(a).

11.    On July 14, 2014 the Mayor of the City of Boston, Martin J. Walsh, issued an Executive Order which established the Taxi Advisory Committee ("TAC"), with a stated objective "to improve the operations…of the City's taxi system."

12.    TAC was in established in 2014 based on a recommendation made by the consulting team the City of Boston commissioned in May 2013 and "charged with undertaking a review of the taxi system's operations."

13.    In that 2014 Executive Order, Mayor Walsh attested to the fact that "the taxi system in the City of Boston provides a significant public service." *See* 42 U.S.C. § 12112(b)(3)(A) and (B).

Respectfully submitted,

STEVAN JOHNSON
City of Boston
Hackney Carriage Driver

Cc:    Via E-Mail

        Carmen M. Ortiz, US Attorney
        District of Massachusetts
        1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
        carmen.ortiz@usdoj.gov

Case 1:16-cr-10225-DPW --- (11/21/2016)

REVISED TO 1965

[8M.]

# City of Boston — Police Department

---

# RULES AND REGULATIONS

FOR

# HACKNEY CARRIAGES

# 1965



# EDMUND L. McNAMARA
### POLICE COMMISSIONER

Case 1:16-cr-10225-DPW --- (11/21/2016)

2

persons, firms and corporations who are owners of such vehicles (if the individual or one member of the firm resides in Boston, and if the principal place of business of the corporation is in Boston) to set up and use them as hackney carriages.

**Fee for same.** The fee for such license shall be ten dollars. For the substitution of the license to set up and use a hackney carriage for that of a hackney carriage previously licensed in accordance with this section, the fee shall be one dollar.

**Hackney carriage shall be licensed from garage.** Hackney carriages shall be licensed from the garage at which they are kept in Boston, and in no case at the stands, public or private.

**No license or permit shall be sold, assigned or transferred without consent, etc.** No license or permit provided for in this rule shall be sold, assigned or transferred without first obtaining the consent of the Police Commissioner in writing.

**Leasing or renting of taxicabs.** The leasing or renting of taxicabs by licensed owners is expressly forbidden, and any infraction of this rule shall be considered sufficient grounds for revocation of the owner's hackney carriage set-up license and medallion.

**Owner shall give notice of change of address or of garage.** When a licensed owner changes his address or the place at which a hackney carriage owned by him is garaged, he shall, within twenty-four hours of such change, notify the Inspector of Carriages in writing.

**Employment cards.** Employment cards shall be issued to drivers by the Police Commissioner, and the licensed owners of hackney carriages shall not employ drivers without such employment cards; said employment cards to be kept by employers during the period that the driver is in their employ.

*Motify*

175

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
Civ. No. 03-4096

ELIZABETH RIDEOUT

v.

BOSTON CAB DISPATCH, INC., EDWARD J. TUTUNJIAN,
VICKY'S INC., EJT MANAGEMENT, INC.,
C&T MANAGEMENT, INC., BOSTON CAR SERVICE, INC., and
MOHAMED FARAH

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR TRUSTEE PROCESS AND TO ATTACH ASSETS OF CERTAIN NAMED DEFENDANTS

This is an action arising from a tragic accident occurring on March 19, 2003 at Logan Airport in Boston.  The accident occurred when a taxicab driver, defendant Mohamed Farah, exited his vehicle without placing the gear in park. When the vehicle began to roll forward, Farah jumped back into the taxi and, in an attempt to apply the brakes, mistakenly hit the accelerator. The cab careened into the plaintiff and another individual, Yuri Wiseman, who were standing on the sidewalk nearby.  Wiseman was killed and the plaintiff suffered serious injuries which have to date required that she undergo seven surgical operations.   Together with $750,000 in medical expenses already incurred, the plaintiff is likely to incur medical bills which exceed  $2 million.

The case is now before the Court on the plaintiff's Motion to Attach certain real and personal property of four of the named defendants: EJT Management, Inc. (""EJT Management"), Boston Cab Dispatch, Inc. ("Boston Cab Dispatch"), Vicky's Inc. ("Vicky's") and Edward Tutunjian individually ("Tutunjian").  Plaintiff also seeks to attach by trustee

1

Case 1:16-cr-10225-DPW ---- (11/21/2016)

11) use of corporation for transactions of dominant shareholders; and 12) use of the corporation in promoting fraud. Admittedly, the evidence that the plaintiff has been able to muster to date is thin, but that is not through any fault of her own; defendants have thus far failed to answer discovery requests made in September 2003 which pertain to these issues.[1] Moreover, in opposing this motion, defendants offer only a two page affidavit of Tutunjian which does not directly address these issues either (except to say that Vicky's files its own tax returns). One inference that could be drawn from this is that the evidence which will eventually come to light in discovery will not be favorable to the defendants. Nevertheless, evidence which has surfaced in other litigation reveals the following.[2]

Tutunjian is the sole stockholder, officer and director of various companies which make up the enterprise known as Boston Cab. Those companies include the defendant Boston Cab Dispatch and the defendant Vicky's. According to deposition testimony of Tutunjian, these various cab companies are managed and run as a single enterprise, with EJT Management at the top. Specifically, it is EJT Management which reviews applications submitted by those interested in becoming drivers. It checks applicants' driving records, and assists drivers in obtaining work cards from police headquarters, with the cards themselves stating that the individual applicant will be driving for EJT Management. Additionally, EJT Management is

---

[1] At the hearing on this Motion on February 26, 2004, this Court ordered that those responses be made and documents produced within ten days.

[2] Specifically, Tutunjian and other associated with Boston Cab have given depositions testimony in the matter of Makrokanis v. Locust Cab, Inc., et al., Civ. No. 98-4172. The Court (Doerfer, J.) denied a request for a protective order in that action which would have foreclosed inquiry into the relationship between the various cab companies. Judge Doerfer noted that the inquiry was appropriate since there appeared to be a "substantial relationship" between the named defendant in that case, Locust Cab, and EJT Management.

4

Case 1:16-cr-10225-DPW --- (11/21/2016)



| | Inspector of Carriages Notice |
|---|---|
| Number: | IOC-09-07 |
| Date: | July 14, 2009 |
| Post/Mention: | Indefinite |

**SUBJECT:   Authorized Credit Card Processors**

Inspector of Carriages Notice  09-01 is hereby rescinded and replaced with the following.

The following companies are hereby approved as the ==only authorized Credit Card processors== for ==use in Boston Licensed Hackney Carriages.==

Creative Mobile Technology
11-51 47th Avenue
Long Island City, NY 11101
Tel: (718) 937-4444                          www.cmtnyc.com

VeriFone Transportation Systems
37-03 21st Street
Long Island City, NT 11101
Tel: (718) 752-1656                          www.taxitronic.net

Gleike, Inc.
1512 N. Throop St.
Chicago, Illinois 60642
Phone 773.489.3839                        www.atagleike.com

Captain Robert W. Ciccolo Jr.
Inspector of Carriages

Case 1:16-cr-10225-DPW ---- (11/21/2016)

| LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | MORTGAGE FORECLOSURE | MO |

## PUBLIC NOTICE
## BOSTON POLICE DEPARTMENT

Notice of Amendments to Hackney Carriage Rules and Regulations

Pursuant to the authority granted under Section 1 of Chapter 392 of the Acts of 1930 (an amendment) the Police Commissioner of the City of Boston hereby announces the following amendments to the Boston Police Carriage Rules and Procedures, Rule 403. The Hackney Carriage Rules and Regulations, previously adopted August 29, 2008. Such amendments will take effect on the date this notice is published in the Boston Herald.

Rule 403 is hereby amended as follows:

**Section 3, (III), (b),** is hereby rescinded and replaced with the following:
b. Title or Purchase and Sales Agreement for a New Taxi: the Medallion Owner or Lessee must present a copy of a motor vehicle title or purchase and sale agreement for a new vehicle as defined by the Registry of Motor Vehicles as approved by the Inspector of Carriages

**Section 3, (III), (c), (xviii),** is hereby rescinded and replaced with the following:
xviii Passenger Information Monitors Each Hackney Carriage shall have mounted on the partition a Passenger Information Monitor which shall display the following:
a. FareCate Card
b. Logan International Airport Special Emergency Conditions
c. Logan International Airport Fees and Tolls
d. Vehicle GPS location
e. Such other information as the Inspector of Carriages shall require.

**Section 5(II), (f)** is hereby rescinded and replaced with the following:
(f) Mandatory Passenger Fare Receipts: Upon request by a passenger, the Hackney Carriage Driver must provide the passenger with an automated printed receipt.

**Section 5(II), (g)** is hereby rescinded.

**Section 5, (II), (i)** is hereby rescinded and replaced with the following:
(i) Respectful Treatment: Hackney Carriage Drivers shall treat all persons in a professional, respectful and courteous manner at all times.
i. Hackney Carriage Drivers shall be respectful to and are required to answer fully and civilly any questions put to them by a Police Officer or Parking Enforcement Officer in the performance of their duties.
ii. Hackney Carriage Drivers shall obey and all lawful commands as may be given to them by any Police Officer or Parking Enforcement Officer.

**Section 7, (1), (d) Radio Association Services** is hereby amended, adding subparagraph (viii)
(viii) Global Positioning System tracking devices are mandatory and all Hackney Carriages shall be equipped with a GPS system approved by the Inspector of Carriages which shall allow the Inspector of Carriages and Medallion Owner to ascertain the wherabouts, activities and fare data of each vehicle via the Internet at all times. Said system shall store such information in a retrievable form for 365 days. This association must provide the Inspector of Carriages with the user name and password necessary to access said system. Such information shall be searchable for the following data:
. Date, time, and location of passenger pick-up and drop-off
* Trip duration measured in time and mileage
* Trip number
* Itemized fare (tolls, surcharges, and tip amount for card payments)
* Payment type (Cash, Credit, Debit, Student ID, Voucher)
* Last four (4) digits of customer credit/debit, etc. account number
* Hackney Medallion number
* Hackney Drivers License number
* Status codes
* Date and time of taxicab dispatch
* "Breadcrumb trail" GPS-based location data. (real-time and historical)

(ix) GPS enhanced dispatch services which enable the radio association to dispatch the Boston Licensed Taxi when can arrive at the location most quickly. Said system shall be equipped with a panic button utilized by the driver which will automatically notify the dispatcher of an emergency and the driver's location.

**Section 7, (1), Radio Association Regulations** is hereby amended, adding paragraph (m)
(m) Each Radio Association shall maintain a membership of at least 30 Boston Licensed Hackney Carriages.

**Appendix III, (2), (d)** is hereby rescinded and replaced with the following:
(d) New Car Premium may be charged a "New Car Premium" for an approved vehicle that is 4 model years old or less at the following rates: 12-hour shift  $18.00, 24-hour shift  $33.00, Weekly shift $110.00, Yearly Shift  $8840.00

Edward F. Davis
Police Commissioner
Dec 16

A public sale in compliance with Massachusetts state law will take place on 12/16/09 at EZ Storage, formerly EZ STORAGE located at 145 North Beacon St., Brighton, MA. The auction will begin at 12:00 P.M. Units will be sold as whole. The following storage unit(s) are up for auction.

Unit Number      Tenant Name/Items

2614             Nicholas Coorad – Desk, Shelves, Lamp, mirror, chairs, rug

1401             Patricia Cedrone – Table, mattress, & box springs, dresser, wardrobe, chairs, boxes
                                                       Dec 9,16

## Sense of Style.

---

## THE COMMONWEALTH OF MASSACHUSETTS
## MASSACHUSETTS DEPARTMENT OF TRANSPORTATION- HIGHWAY DIVISION

### NOTICE OF A PUBLIC HEARING
Project No. 604991

A Design Public Hearing will be held by MassDOT- Highway Division to discuss the proposed Resurfacing of Route 9 project in Framingham and Natick, MA.

**WHERE:**
Memorial Building (Town Hall), Ablondi Room
150 Concord Street
Framingham, MA 01702

**WHEN:** Wednesday, December 23, 2009 @ 7:00 PM

**PURPOSE:** The purpose of this hearing is to provide the public with the opportunity to become fully acquainted with the proposed Route 9 Resurfacing project. All views and comments made at the hearing will be reviewed and considered to the maximum extent possible.

**PROPOSAL:** The proposed project consists of resurfacing Route 9 in Framingham and Natick from the Southborough/Framingham Town Line to Walnut Street in Natick. The total length of the project would be approximately 7.8 miles. The improvements include pavement micro-milling and resurfacing, sidewalk and wheelchair ramp upgrades, guardrail repairs, installing and resetting curb, isolated tree trimming, cleaning of the existing drainage systems and new pavement markings and signs.

A secure right-of-way is necessary for this project. Acquisitions in fee and permanent or temporary easements may be required. The Commonwealth of Massachusetts is responsible for acquiring all needed rights in private or public lands. MassDOT's policy concerning land acquisitions will be discussed at this hearing.

Written views received by MassDOT subsequent to the date of this notice and up to five (5) days prior to the date of the hearing shall be displayed for public inspection and copying at the time and date listed above. Plans will be on display one-half hour before the hearing begins, with an engineer in attendance to answer questions regarding this project. A project handout will be made available on the MassDOT website listed below.

Written statements and other exhibits in place of, or in addition to, oral statements made at the Public Hearing regarding the proposed undertaking are to be submitted to Frank A. Tramontozzi, P.E., Chief Engineer, MassDOT- Highway Division, 10 Park Plaza, Room 4260, Boston, MA 02116, ATTN: Project Management Section, Project File No. 604991. Such submissions will also be accepted at the hearing. Mailed statements and exhibits intended for inclusion in the public hearing transcript must be postmarked within ten (10) business days of this Public Hearing.

The community has declared that this facility is accessible to all in compliance with the ADA / Title II. However, persons in need of ADA / Title II accommodations should contact Angela Rudikoff by phone at (617) 973-7005 or email angela.rudikoff@state.ma.us. Requests must be made at least 10 days prior to the date of the public hearing.

In case of inclement weather, hearing cancellation announcements will be posted on the MassDOT website http://www.mass.gov/mhd.

LUISA PAIEWONSKY                FRANK A. TRAMONTOZZI, P.E.
HIGHWAY DIVISION ADMINISTRATOR       CHIEF ENGINEER

Boston, Massachusetts                              Dec 9, 16

---

| LAND COURT NOTICE | LAND COURT NOTICE |

## COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
## DEPARTMENT OF THE TRIAL COURT
(SEAL)

Case No. 09 MISC 410577

To: Lambrini Kitsaki-Tsitsas and George Tsitsas and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.
Bank of New York Mellon as Trustee for the Certificate Holders of CWMBS 2004-25 Claiming to be the holder of mortgage covering real property in Boston (Brighton), numbered 12 Mount Vernon Street Given by Lambrini Kitsaki-Tsitsas and George Tsitsas to "MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting solely as nominee for America's Wholesale Lender, "Lender"; its successors and assigns, dated October 25, 2004, and recorded at the Suffolk County Registry of Deeds in Book 35783, Page 149, and now held by plaintiff by assignment; has filed with said court a complaint for authority to foreclose said mortgage in the manner following: by entry and possession and exercise of power of sale. If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before the 18th day of January 2010 or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, KARYN F. SCHEIER, Chief Justice of said Court this 7th day of December 2009

Attest:
Deborah J. Patterson
Recorder
(KITSAKI-TSITSAS)(12/16/09)(181210)           Dec 16

---

| MORTGAGE |

By virtue of and in execution of certain mortgage given by William B. Dickey to herewith and recorded in Suffolk Page 277, of which more f/k/a Citizens Bank, N.A. s/b/n to Neworld Bank F/ ent holder, for breach of purpose of foreclosing the 97 Mount Ida Road, Dorcl will be sold at a Public Au the mortgaged premises, singular the premises desc the land with the building Suffolk County, Commonw

Northeasterly by Mount Id tioned as Robinson Avenu

Northwesterly by land of eighty-seven and 99/100

Southwesterly by Lot 11, a

Southeasterly by Lots 12 and 57/100 (87.57) feet;

Containing 3513 square fe shown as Lot 14 on a plan Jeffrey, Dorchester, Mass. recorded in Suffolk Count

For reference to title see d

The above premises will be and other encumbrances and will be conveyed sub ord, tenancies, and rights any, as shall, notwithstan encumbrances thereon af Terms of the Sale: Cash, sum of Five Thousand D shown at the time and pl der and will be required. bidder; successful bidder acceptance of bid; balanc rent funds in thirty (30) d of mortgagee's attorney Road, Suite 100, Warwick designated by mortgagee tained in said mortgage s error in this publication. Other terms to be announ RBS CITIZENS, NATIONAL S/B/N TO CITIZENS BAN WORLD BANK F/K/A NEW By its Attorneys, PARTRIDGE SNOW & HAH 2364 Post Road, Suite 100 Warwick, Rhode Island 0 (401) 681-1900

(5083-116/Dickey)(12/16

---

| MORTGAGE |

By virtue of and in exec certain mortgage given Registration Systems, In gage Corp., dated County Registry of Deed gage U.S. Bank Nationa holders of MASTR A WMCDMortgage Pass-Th the present holder by ass ity of Deeds in Book 432 said mortgage and for t mortgaged premises loc will be sold at a Public A the mortgaged premises, singular the premises des

A certain parcel of land folk and said Commonw SOUTHWESTERLY by s NORTHWESTERLY by la dred nine (109) feet; NO Eldredge et als, fifty eigh by other land now or form teen and 64/100 (117.64) Said premises are convey insofar as the same are n

For mortgagor's title se Registry of Deeds in Book

The premises will be so other municipal assessm other enforceable encum over this mortgage, and i ments, restrictions, easer ject to all tenancies and/o

Terms of the Sale: Cash $5,000.00 as a deposit m sale in order to qualify a designate(s) are exempt written Memorandum of purchase price payable in days from the date of th ney, Korde & Associates, ford, MA 01824-4100, or mortgagee. The descripti gage shall control in the ication.
Other terms to be announ U.S. Bank National Assoc of MASTR Asset Backe Pass-Through Certificates Barnor Korde & Associate 321 Billerica Road, Suite Chelmsford MA 01824

---

ke this job and love it.

with fresh listings daily, find the job you love now.

in partnership with  YAHOO! hotjobs

rald.com/JOBFIND

Case 1:16-cr-10225-DPW ---- (11/21/2016)

| LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | LEGAL NOTICES | MORTGAGE FORECLOSURE | MORTGAGE FORECLOSURE | MORTGAGE FORECLOSURE |
|---|---|---|---|---|---|---|

**THE COMMONWEALTH OF MASSACHUSETTS**
**MASSACHUSETTS DEPARTMENT OF TRANSPORTATION- HIGHWAY DIVISION**

**NOTICE OF A PUBLIC HEARING**
Project File No. 604991

A Design Public Hearing will be held by MassDOT- Highway Division to discuss the proposed Resurfacing of Route 9 project in Framingham and Natick, MA.

WHERE:
Memorial Building (Town Hall), Ablondi Room
150 Concord Street
Framingham, MA 01701

WHEN: Wednesday, December 23, 2009 @ 7:00 PM

PURPOSE: The purpose of this hearing is to provide the public with the opportunity to become fully acquainted with the proposed Route 9 Resurfacing project. All views and comments made at the hearing will be reviewed and considered to the maximum extent possible.

PROPOSAL: The proposed project consists of resurfacing Route 9 in Framingham and Natick from the Southborough/Framingham Town Line to Walnut Street in Natick. The total length of the project would be approximately 7.8 miles. The improvements include pavement micro-milling and resurfacing, sidewalk and wheelchair ramp upgrades, guardrail repairs, installing and resetting curb, isolated tree trimming, cleaning of the existing drainage systems and new pavement markings and signs.

A secure right-of-way is necessary for this project. Acquisitions in fee and permanent or temporary easements may be required. The Commonwealth of Massachusetts is responsible for acquiring all needed rights in private or public lands. MassDOT's policy concerning land acquisitions will be discussed at this hearing.

Written views received by MassDOT subsequent to the date of this notice and up to five (5) days prior to the date of the hearing shall be displayed for public inspection and copying at the time and date listed above. Plans will be on display one-half hour before the hearing begins, with an engineer in attendance to answer questions regarding this project. A project handout will be made available on the MassDOT website listed above.

Written statements and other exhibits in place of, or in addition to, oral statements made at the Public Hearing regarding the proposed undertaking are to be submitted to Frank A. Tramontozzi, P.E., Chief Engineer, MassDOT- Highway Division, 10 Park Plaza, Boston, MA 02116, ATTN: Project Management Section, Project File No. 604991. Such submissions will also be accepted at the hearing. Mailed statements and exhibits intended for inclusion in the public hearing transcript must be postmarked within ten (10) business days of this Public Hearing.

The community has declared that this facility is accessible to all in compliance with the ADA / Title II. However, persons in need of ADA / Title II accommodations should contact Angela Rudikoff by phone at (617) 973-7005 or email angela.rudikoff@state.ma.us. Requests must be made at least 10 days prior to the date of the public hearing.

In case of inclement weather, hearing cancellation announcements will be posted on the MassDOT website http://www.mass.gov/mdot.

LUISA PAIEWONSKY                FRANK A. TRAMONTOZZI, P.E.
HIGHWAY DIVISION ADMINISTRATOR      CHIEF ENGINEER

Boston, Massachusetts

Dec 9, 16

---

**LEGAL NOTICE**
**MORTGAGEE'S SALE OF REAL ESTATE**

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Jacqueline T. Dickey, James S. Dickey and William B. Dickey to Neworld Bank for Savings, dated March 1, 1988 and recorded in Suffolk County Registry of Deeds in Book 14526, Page 277, of which mortgage RBS Citizens, National Association f/k/a Citizens Bank, N.A. s/b/m to Citizens Bank of Massachusetts s/b/m to Neworld Bank f/k/a Neworld Bank for Savings is the present holder, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 97 Mount Ida Road, Dorchester (District of Boston), Massachusetts will be sold at a Public Auction at 1:00 a.m. on January 13, 2010, all the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

The land with the buildings thereon, situated in Boston, (Dorchester) Suffolk County, Massachusetts, bounded and described as follows:

Northeasterly by Mount Ida Road, shown on a plan hereinafter mentioned as Robinson Avenue, forth (40) feet;

Northwesterly by Land of owners unknown; as shown on said plan, eighty-seven and 99/100 (87.99) feet;

Southwesterly by Lot 11, as shown on said plan, forty (40) feet;

Southeasterly by Lots 12 and 13 as shown on said plan, eighty-seven and 57/100 (87.57) feet;

Containing 3511 square feet of land according to said plan, and being shown as Lot 14 on a plan entitled, "Plan of House Lots for George B. Jeffrey, Dorchester, Mass.," dated May 2, 1907, Dana E. Perkins, C.E. recorded in Suffolk County Registry of Deeds in Book 3236, Page 32.

For reference to title see deed recorded in Book 11213, Page 032.

The above premises will be sold subject to all taxes, assessments, and other encumbrances which may constitute a prior lien thereon, and will be conveyed subject to any easements, restrictions of record, tenancies, and rights of redemption for unpaid federal taxes, if any, as shall, notwithstanding this provision, constitute valid liens or encumbrances thereon after said sale.

Terms of the Sale: Cash, cashier's check, or certified check in the sum of Five Thousand Dollars ($5,000.00) as a deposit must be shown at the time and place of the sale in order to qualify as a bidder and will be required to be paid as a deposit by the successful bidder; successful bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or current funds in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Partridge Snow & Hahn LLP, 2364 Post Road, Suite 100, Warwick, RI 02886, or such other time as may be designated by mortgagee. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.
RBS CITIZENS, NATIONAL ASSOCIATION F/K/A CITIZENS BANK, N.A. S/B/M TO CITIZENS BANK OF MASSACHUSETTS S/B/M TO NEWORLD BANK F/K/A NEWORLD BANK FOR SAVINGS
By Its Attorneys,
PARTRIDGE SNOW & HAHN LLP
2364 Post Road, Suite 100
Warwick, Rhode Island 02886
(401) 681-1900

(5083-116/Dickey)(12/16/09, 12/23/09, 12/30/09)(181020)
Dec 16, 23, 30

---

**LAND COURT NOTICE**     **LAND COURT NOTICE**

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT
(SEAL)

Case No. 09 MISC 410757

To: Lambrini Kitsaki-Tsitsas and George Tsitsas and to all persons entitled to the benefit of the Servicemembers Civil Relief Act

Bank of New York Mellon as Trustee for the Certificate Holders of CWMBS 2004-25 Claiming to be the holder of mortgage Covering real property in Boston (Brighton), numbered 12 Mount Vernon Street Given by Lambrini Kitsaki-Tsitsas and George Tsitsas to "MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting solely as nominee for America's Wholesale Lender, "Lender"; its successors and assigns, dated October 25, 2004, and recorded at the Suffolk County Registry of Deeds in Book 35783, Page 149, and now held by plaintiff by assignment; has filed with said court a complaint for authority to foreclose said mortgage in the manner following: by entry and possession and exercise of power of sale. If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosureyou or your attorney should file a written appearance and answer in said court at Boston on or before the 18th day of January 2010 or you may be forever barred from claiming that such foreclosure is invalid under said act.

Witness, KARYN F. SCHEIER, Chief Justice of said Court this 7th day of December 2009

Attest:
Deborah J. Patterson
Recorder
(KITSAKI-TSITSAS)(12/16/09)(181020)
Dec 16

---

**LEGAL NOTICE**
**MORTGAGEE'S SALE OF REAL ESTATE**

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Lionel Wood to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for WMC Mortgage Corp., dated October 2, 2006 and recorded with the Suffolk County Registry of Deeds at Book 40540, Page 175, of which mortgage U.S. Bank National Association, as Trustee for the registered holders of MASTR Asset Backed Securities Trust 2007-WMC1Mortgage Pass-Through Certificates Series 2007-WMC1 is the present holder by assignment Recorded at Suffolk County Registry of Deeds in Book 43232, Page 268, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 20 Brookledge Street, Boston, MA will be sold at a Public Auction at 11:00 AM on January 6, 2010, at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

A certain parcel of land situated in Roxbury, in the County of Suffolk and said Commonwealth, bounded and described as follows: SOUTHWESTERLY by said Brookledge Street, sixty (60) feet; NORTHWESTERLY by land now or late of Betsy W. Everett, one hundred nine (109) feet; NORTHEASTERLY by land now or late of Ellen S. Eldredge et als, fifty eight and 12/100 (58.12) feet; SOUTHEASTERLY by other land now or formerly of said et als, one hundred and seventeen and 54/100 (117.54) feet. Containing 6509 square feet of land, more or less.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record subject to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cash, cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or by certified check in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 321 Billerica Road, Suite 210, Chelmsford, MA 01824-4100, or such other time as may be designated by mortgagee. The description of the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.
U.S. Bank National Association, as Trustee for the registered holders of MASTR Asset Backed Securities Trust 2007-WMC1Mortgage Pass-Through Certificates Series 2007-WMC1
Korde & Associates, P.C.
321 Billerica Road, Suite 210

Case 1:16-cr-10225-DPW ---- (11/21/2016)

# City of Boston
## Hackney Carriage
## Shift Lease Agreement
### 2010 Version

Agreement made this _____ day of _____, _____ between:

**Lessor**

Name: _____

Address: _____

_____

_____

Tel: _____

**Lessee**

Name: _____

Address: _____

_____

_____

Tel: _____

Hackney Lic. # _____

**Lessee**

Name: _____

Address: _____

_____

_____

Tel: _____

Hackney Lic. # _____

Lessor Initials

Lessee Initials

City of Boston Hackney Carriage Shift Lease Agreement: Rev. 12/09

Post Office Box 170151 • Boston, Massachusetts 02117

March 11, 2013

**CERTIFIED MAIL**

**Lichten & Liss-Riordan, P.C.**
Attn:  Atty. Shannon Liss-Riordan
100 Cambridge Street, 20th Floor
Boston, Massachusetts 02114
Label Receipt No.: 7011 2970 0002 6185 2805

**Captain Steven P. McLaughlin**
Hackney Carriage Unit
One Schroeder Plaza, 1st Floor
Boston, Massachusetts 02120
Label Receipt No.: 7011 2970 0002 6185 2812

**E J T Management, Inc.**
60 Kilmarnock Street
Boston, Massachusetts 02215
Label Receipt No.: 7011 2970 0002 6185 2829

Re:     *Mis*classification of **Boston's** Cabdrivers (lawsuit)

Dear Interested Party(s):

This letter is written to supplement the very recent March 9th letter.  But, *first*:

Has Boston Mayor Thomas M. Menino ever recognized **Boston's** Cabdrivers as the "Ambassadors" of the City of Boston?  (**See**: *Boston Haitian Reporter*, July 2008; p. 9)

The article which recently appeared in *Carriage News* (February 2013 Edition) written by Atty. Shannon Liss-Riordan mentions that **Boston's** Cabdrivers pay expenses, including gas to refuel the gas tanks of the taxis.  It is known by the Inspectional Services for the City of Boston that E J T (Boston Cab) has engaged in the unfair and deceptive practice of fraudulently inflating gas *bills* presented to **Boston's** Cabdrivers for alleged deficient refueling of the gas tanks of the taxis E J T controls through different corporations.

It seems the practice was that an attendant employed by E J T at the gas pumps located at the Boston Cab garage on Kilmarnock Street would refuel the gas tanks of the taxis controlled by E J T and presumably record the correct price on a sheet with the Medallion Numbers (in numerical order) of the taxis E J T controls through the different corporation, then "Raphie," would illegally inflate the gas price E J T charged **Boston's** Cabdrivers and then conceal this practice by merely presenting the *bills* in sticker form to justify charging **Boston's** Cabdrivers these illegally inflated gas prices.  E J T would then systematically collect these "debts" by denying **Boston's** Cabdrivers a taxi to work with until the inflated *bills* were paid.  Is that what one would call sticker shock?

*Boston Globe* columnist Jeff Jacoby it seems correctly assessed the cab industry as being a feudal system, wow!!!

Thank you again, for your attention.

Respectfully submitted.

Case 1:16-cr-10225-DPW --- (11/21/2016)

JUN 26 2016

Case 1:16-cr-10225-DPW --- (11/21/2016)

# The Boston Globe

## - Excerpts -

**March 31, 2013**

1. <u>p. 8, column 4 - (Robert Ciccolo)</u>

   "The unfortunate reality is that the [taxi] industry [in Boston] suffers from a significant level of fraud and abuse," then-lieutenant Robert W. Ciccolo, Jr. wrote for an industry newspaper when he served as the hackney division chief uniformed officer, a post he left in early 2010. "This takes place at multiple levels with some owners overcharging and defrauding drivers."

2. <u>p. 8, columns 4 – 5 – (Ed Davis)</u>

   "If I find out that someone is enriching themselves on the backs of poor cabdrivers, t will consider them unsuitable," said Davis, whose father once drove a cab in Lowell. "They won't be medallion owners in this city."

3. <u>p. 9, column 1</u>

   Davis may also want to look into the kid-glove treatment enjoyed by Paul Morrill, a longtime friend of Mayor Menino, who, with his sons – one of them a State Police trooper – controls 11 taxi medallions worth $7 million. Morrill hosted most of the city's taxi fleet owners at his home for a Menino fund-raiser in 2000. That was during a period when Morrill was accused of misappropriating $200,000 as treasurer of the Independent Taxi Owners Association in a lawsuit brought by ITOA.

JUN 2 6 2016

Case 1:16-cr-10225-DPW --- (11/21/2016)

4.     p. 9, column 2

==Uneven treatment – Hackney's see-no-evil habits when it comes to
policing medallion owners make the rare exceptions to that pattern stand out.==

[see: Corbin v. Morrill, (Suffolk Superior Court)]


5.     p.9, columns 2-3 – (Robert Ciccolo)

But then Ciccolo chimed in.  He said it was Corbin's duty...to ensure that
drivers were operating safely.

"I would be submitting this to a board of three captains who would rule
on whether or not she's a suitable person to own a taxi medallion due to her
violations of the rules," Ciccolo told the judge, according to the court
transcript.


6.     p. 9, column, 3

Ciccolo, through a department spokeswoman, said when he learned of
the lawsuit "he felt it appropriate to notify the individuals about the
departments rule on payment of insurance costs."


7.     p. 9, column 4

==Boston cabbies for many years were classified as employees== of their taxi
==companies,== with owners and drivers splitting the daily meter receipts and
drivers keeping their tips.  At some companies drivers received an array of
benefits and protections, including subsidized health care coverage, paid
vacations, pensions, and workers compensation.

JUN 2 6 2016

**8.**   p. 9, column 4-5

Taxi fleets gradually stopped hiring drivers as employees in the 1970's after the police commissioner lifted a decades-old ban on medallion owners leasing cabs to independent contractors. Today, behind the wheel of about half of Boston's cabs are so-called shift drivers, who own neither the car nor its license.

**9.**   p. 9, column 5

The US Bureau of Labor Statistics puts an average cabbies income at $27,000, just slightly lower than the city's own estimate. With drivers often on the road for 60 hours a week or more, it can amount to minimum wage work – or less than that. Some sleep in their ca[b]s during shifts, or work 24 hours straight in what the drivers call "iron shifts."

**10.**   p. 9, column 6 –(Mark Cohen)

Cohen, who sits on the board of an international association of transportation regulators, helped usher in requirements that all cabs accept credit cards. [A *driver* is not a cab]

The need for reports, he said, has been supplanted by more reliable financial data obtained from credit card machines and modern meters.

Base on **course of conduct**, rather than words.

Case 1:16-cr-10225-DPW --- (11/21/2016)

JUN 2 6 2016

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BOSTON CAB DISPATCH, INC. and EJT MANAGEMENT, INC. | UBER TECHNOLOGIES, INC., |

**(b)** County of Residence of First Listed Plaintiff   Suffolk
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Francisco
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Samuel Perkins, Richard E. Brody, Michael Stefanilo, BRODY,
HARDOON, PERKINS & KESTEN, LLP, One Exeter Plaza, Boston, MA
02116 (617) 880-7100

Attorneys *(If Known)*
Michael Mankes, LITTLER MENDELSON, P.C., One International
Place, Suite 2700, Boston, MA  02110 (617) 358-6000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | Act |
| | Medical Malpractice | | Leave Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332, 1441, and 1446
Brief description of cause:
Misrepresentations pursuant to the Lanham Act, Violations of M.G.L. c. 93A, Violations pursuant to RICO

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
04/03/2013

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael Mankes

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT                    APPLYING IFP                    JUDGE                    MAG. JUDGE

Post Office Box 170151 • Boston, Massachusetts 02117

April 11, 2013

**CERTIFIED MAIL, _R.R.R._**

**Mr. Edward J. Tutunjian**
E J T MANAGEMENT, INC.
60 Kilmarnock Street
Boston, Massachusetts 02215
Label Receipt No.: **7011 0470 0002 5746 1555**

Re:     **LEASE AGREEMENT 4548**

Dear Mr. Tutunjian:

In or about October 2009 E J T MANAGEMENT, INC. ("E J T") apparently decided to use disparaging utterances supposedly made by an E J T employee named Mr. Girma Tilaun to support an "indefinite suspension" of Lease Agreement 4548, which is believed to be a retaliatory breach of Lease Agreement 4548 or punishment for failing to bribe Mr. Tiluan with "tips."

Please provide the undersigned, in writing, with the current status of Lease Agreement 4548 by mailing notice of such status to the address shown above within three (3) days of delivery of this written request, and also obtain a Certificate of Mailing as proof of such mailing.

Thank you.

STEVAN JOHNSON

Cc: United States Department of Justice
    United States Attorney's Office
    District of Massachusetts
    Attn: **Carmen M. Ortiz, Esq.**
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    Label Receipt No.: **7011 0470 0002 5746 1586**

**Lichten & Liss-Riordan, P.C.**
Attn:  Atty. Shannon Liss-Riordan
100 Cambridge Street, 20th Floor
Boston, Massachusetts  02114
Label Receipt No.: **7011 0470 0002 5746 1562**

**Robert P. Joy, Esq.**
MORGAN BROWN & JOY LLP
200 State Street, 11th Floor
Boston, Massachusetts 02109-2605
Label Receipt No.: **7011 0470 0002 5746 1616**

**Samuel Perkins, Esq.**
BRODY, HARDOON, PERKINS & KESTEN, LLP
1 Exeter Plaza, 12th Floor
Boston, Massachusetts 02116
Label Receipt No.: **7011 0470 0002 5746 1593**

**Captain Steven P. McLaughlin**
Hackney Carriage Unit
One Schroeder Plaza, 1st Floor
Boston, Massachusetts 02120
Label Receipt No.: **7011 0470 0002 5746 1609**

**Michael Mankes, Esq.**
LITTLER MENDELSON
1 International Place, Suite 2700
Boston, Massachusetts 02110
Label Receipt No.: **7011 0470 0002 5746 1579**

JUN 2 9 2016

<div align="center">

**STEVAN JOHNSON**
Post Office Box 170151
Boston, Massachusetts 02117

</div>

April 12, 2013

**<u>CERTIFIED MAIL</u>**

**Michael Mankes, Esq.**
LITTLER MENDELSON
1 International Place, Suite 2700
Boston, Massachusetts 02110
Label Receipt No.: **7011 0470 0002 5746 1579**

> Re:  **Edward J. Tutunjian  ("E J T")**
>
> United States District Court
> District of Massachusetts
> Action No.: 13-cv-10769 (NMG)

Dear Attorney Michael Mankes:

Attached hereto please find a copy of a nine (9) page correspondence sent via Certified Mail to Mr. Travis Kalanick on March 22, 2013 which includes a letter dated March 21, 2013 to an attorney of record for Plaintiff ("E J T"), in the above-referenced action, seeking a legal opinion. No opinion has been provided, therefore, it is hereby requested that you please provide a legal opinion regarding the following:

In light of the averments contained at ¶¶ 51-54 of the Complaint in the above-referenced action filed on behalf of Plaintiff E J T asserting R.I.C.O. violations, in your opinion:

Is it legally permissible for **Boston's** Cabdrivers having [so-called] Lease Agreements with Plaintiff E J T to rescind third-party consent CMT (Creative Mobile Technologies) obtained from **Boston's** Cabdrivers:

1. under duress (through coercion, threats, intimidation or otherwise); and
2. thereby obtain relief from burdensome ATM and bank fees (or other charges) relative to a contract or contracts **Boston's** Cabdrivers are not privy to?

Cc: United States Department of Justice
    United States Attorney's Office
    District of Massachusetts
    **Attn: Carmen M. Ortiz, Esq.**
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    Label Receipt No.: **7011 0470 0002 5746 1586**

**Samuel Perkins, Esq.**
BRODY, HARDOON, PERKINS & KESTEN, LLP
1 Exeter Plaza, 12th Floor
Boston, Massachusetts 02116
Label Receipt No.: **7011 0470 0002 5746 1593**

Case 1:16-cr-10225-DPW --- (11/21/2016)



STEVAN JOHNSON
Post Office Box 170151
Boston, Massachusetts 02117

*FILE COPY*

April 30, 2013

**CERTIFIED MAIL**

Document 1

**Commissioner Edward F. Davis**
BOSTON POLICE DEPARTMENT
One Schroeder Plaza
Boston, Massachusetts 02120
Label Receipt No.: 7012 3460 0001 4324 8645

⑦

Re :        **Edward J. Tutunjian   ("E J T")**

Dear Commissioner Davis:

With respect to **Chapter 392 of the Acts of 1930**, please kindly provide or cause to be provided to the undersigned the following:

  a.  Name of newspaper in the City of Boston that published Boston Police Department Rule 403 (appearing to have become effective August 29, 2008);

  b.  Date of said publication; and

  c.  A copy of said publication (if possible).

Thank you very much for all your considerations.

Sincerely,

STEVAN JOHNSON

Cc:  **Lichten & Liss-Riordan, P.C.**
Attn: Atty. Shannon Liss-Riordan
100 Cambridge Street, 20th Floor
Boston, Massachusetts 02114
Label Receipt No.: 7012 3460 0001 4324 8744

**Captain Steven P. McLaughlin**
Hackney Carriage Unit
One Schroeder Plaza, 1st Floor
Boston, Massachusetts 02120
Label Receipt No.: 7012 3460 0001 4324 8651

-5-

Case 1:16-cr-10225-DPW ---- (11/21/2016)

# BostonPolice

*D E P A R T M E N T*

One Schroeder Plaza, Boston, MA 02120-2014

May 1, 2013

**Document 2**

Stevan Johnson
PO Box 170151
Boston, Ma. 02117

⑧

**Re:  Request for Public Records**

Dear Mr. Johnson:

    This letter is in response to your request for documents potentially in the possession, custody or control of the Boston Police Department under the Freedom of Information Act (FOIA [5 U.S.C. § 552]) and/or Massachusetts Public Records Law (M.G.L. c. 66, § 10).

    Please be advised that this office receives a vast amount of requests for public records, and these requests are dealt with in the order they are received. I have requested the information you seek from our respective department(s), and am awaiting their reply. Upon receipt of documents, I will begin the process of reviewing and segregating them, create a good faith cost estimate, and forward it to you for payment. *See* 950 C.M.R. 32.06(1); 950 C.M.R. 32.03; M.G.L. c 66 § 10(a).

    Feel free to follow up on the status of your request by calling the number below anytime. Thank you.

<div align="right">

Sincerely,
Office of the Legal Advisor
617-343-4550

</div>



- 6 -

STEVAN JOHNSON
Post Office Box 170151
Boston, Massachusetts 02117

**MAY 17, 2013**

**CERTIFIED MAIL**

**Commissioner Edward F. Davis**
BOSTON POLICE DEPARTMENT
One Schroeder Plaza
Boston, Massachusetts 02120
Label Receipt No.: **7010 0290 0001 3920 2983**

**AMENDED COMPLAINT**
**- against -**
**E J T MANAGEMENT, INC.**
(Raffi Chapian)

Dear Commissioner Davis:

I. Introduction

The *Boston Globe's* Spotlight series that began March 31, 2013 featuring the cab industry in Boston propels this Amended Complaint relating back to the Original Complaint filed with the City of Boston's Weights and Measures Division at the Inspectional Services Department in or about September/October 2009. The Spotlight series alludes to the gasoline charges E J T Management, Inc. ("E J T") invariably subjects **Boston's** Cabdriver too frequently without *any* proof whatsoever.

II. Facts

1.  Beginning about July 1, 2009 employees of E J T began singling out the holder of Lease Agreement 4548 by refusing to lease an available taxi.

2.  On a particular day in August 2009, Mr. Girma Tiluan refused to allow the holder of Lease Agreement 4548 to *renew* (extend) the lease on the current taxi already in possession, contrary to E J T's common business practice. This was a breach of Lease Agreement 4548.

3.  Since it was anticipated that the taxi was not being returned, no gasoline was purchased at an outside station. So instead, the taxi was refueled at the Boston Cab garage located at 60 Kilmarnock Street after Mr. Tiluan's refusal. The bill for the gasoline E J T sold was about $15.50. The bill was paid that day.

4.  Several weeks later, per E J T's common practice, a bill in the form of a sticker was presented to the holder of Lease Agreement 4548 for the same bill mentioned *infra* a ¶ 3 above.

5.  But, Raffi Chapian had illegally inflated that bill by more than $5.00 so it fraudulently appeared as though $21.00 was owed. It would seem the inflated bill violates *G.L. c.* 94 § 295C.

6.  The pattern of E J T employees presenting **Boston's** Cabdrivers with gasoline bills in the form of a sticker created by Raffi Chapian (or other E J T managers) to collect money for gasoline "debts" has been in practice since at least June 2004.

Case 1:16-cr-10225-DPW ---- (11/21/2016)

JUN 26 2016

7.      In or about September/October 2009 a complaint was filed at 1010 Massachusetts Avenue directly with Robert M. McGrath in the Weights and Measures Division of the Inspectional Services Department for the City of Boston against E J T, to which this amendment is related.

**8.      As a result of the complaint, a refund check in the amount of $21.00 was enclosed with a letter from Mr. McGrath dated October 27, 2009. The check was subsequently misplaced and it is hereby requested that it be reissued and added together with the difference in price from any other gasoline E J T sold that may be found to have been illegally inflated by any employee of E J T since June 2004, including Raffi Chapian.**

9.      At about the time the complaint was filed directly with Robert M. McGrath at the Weights and Measures Division of the Inspectional Services Department for the City of Boston against E J T, Mr. Chapian (presumably in conjunction with others) chose to retaliate by "suspend[ing] indefinitely" Lease Agreement 4548. The pretext used for the otherwise retaliatory *suspension* was disparaging utterances supposedly made by Mr. Tiluan against the holder of Lease Agreement 4548.


Respectfully,


_____

STEVAN JOHNSON
Complainant


Cc:     **Lichten & Liss-Riordan, P.C.**
        Attn: Atty. Shannon Liss-Riordan
        100 Cambridge Street, 20th Floor
        Boston, Massachusetts 02114
        Label Receipt No.: **7010 0290 0001 3920 3829**

        **E J T Management, Inc.**
        60 Kilmarnock Street
        Boston, Massachusetts 02215
        Label Receipt No.: **7010 0290 0001 3920 3812**

        THE BOSTON GLOBE
        **Attn: Bob Hohler**
        135 Morrissey Boulevard
        Boston, Massachusetts 02125
        Label Receipt No.: **7010 0290 0001 3920 2990**

        THE BOSTON GLOBE
        **Attn: Bob Hohler**
        Post Office Box 55819
        Boston, Massachusetts 02205-5819
        Label Receipt No.: **7010 0290 0001 3920 3836**

JUN 26 2016

Case 1:16-cr-10225-DPW ---- (11/21/2016)

6-13-2013

CERTIFIED MAIL

Stevan Johnson

P.O. Box170151

Boston, Ma., 02117

Dear Mr. Johnson,

A letter dated May 17, 2013 to Police Commissioner Edward Davis by you made allegations against EJT Management that need to be further investigated.  Several attempts have been made to contact you regarding this letter.  None of the attempts have been answered by you.  I would like for you to call the Boston Police Hackney Unit and set up an appointment to see me.  That number is 617-343-5264.  Thank you.

Captain Steven McLaughlin

Commander, Hackney Carriage Unit

EK61333111BUS

COPY

12/11/2014

JUN 26 2016



One Schroeder Plaza, Boston, MA 02120-2014

Date 7-10-13

To Stevan Johnson

Goodmorning/Good afternoon

    This is to inform you that an individual has filed a complaint against you the operator of Medallion 1215 Please contact or appear at the hackney unit upon receiving this notice 617 343 4475   8:30 am to 3:30 pm Monday thru Friday to schedule an initial hearing.
(And to continue to attempt contact the hackney unit until an initial hearing is scheduled)

**Complaint is concerning A) credit card refusal**
                                    B) Failure to notify of change of address and emergency contact information, within 48 hours

Case 1:16-cr-10225-DPW ---- (11/21/2016)

# E. J. T. MANAGEMENT, INC.

September 5, 2013

Mr. Stevan Johnson
P. O. Box 170151
Boston, MA 02117

Dear Mr. Johnson:

On August 28, 2013 you came to EJT Management Inc and requested that we cash-out Boston Cab Dispatch vouchers totaling $150.50. We provided you with cash, contrary to company policy and despite the fact that you accepted the vouchers in May while driving a cab that was not leased from EJT Management Inc., nor a member Boston Cab radio association.

At this time, we also attempted to return to you your deposit in the amount of $200.00. You refused to accept the deposit, stating that we should keep it in case the vouchers didn't clear. We have tried to return your deposit on multiple occasions, and are uncertain why you persist in refusing to accept it. We enclose a check for $200.00, the full amount of your deposit.

Sincerely,

Manager
EJT Management Inc.

cc: ~~Chief Paul O'Conner~~ *Sergeant Flemming*
co/ Hackney Carriage Unit
1 Schroeder Plaza, 1st floor
Boston MA 02120

Jenny Cooper
co/ Bingham
1 Federal St
Boston MA 02110

COPY

A/75581120.1

60 KILMARNOCK STREET, BOSTON, MA 02215 • TEL: (617) 266-4700 FAX: (617) 266-4163

Case 1:16-cr-10225-DPW --- (11/21/2016)



One Schroeder Plaza, Boston, MA 02120-2014

September 6, 2013

Mr. Stevan Johnson
PO Box 170151
Boston, MA 02117

Dear Mr. Johnson:

Pursuant to G. L. c. 66, § 10 (b), this correspondence is to confirm receipt of your request for records that are potentially in the possession, custody or control of the Boston Police Department.

After diligent search, the Department is unable to locate a copy of the document you requested.  As a courtesy, I have enclosed a copy of a notice that appeared in the December 16, 2009 edition of the Boston Herald

Thank you.

Sincerely,

Office of the Legal Advisor

Mayor Thomas M. Menino  •  Commissioner Edward F. Davis

**BINGHAM**

Case 1:16-cr-10225-DPW ---- (11/21/2016)

Jenny K. Cooper
Direct Phone: +1.617.951.8473
Direct Fax:   +1.617.428.6385
jenny.cooper@bingham.com

October 25, 2013

**VIA U.S. MAIL**

Mr. Stevan Johnson
P.O. Box 170151
Boston, MA  02117

Dear Mr. Johnson:

I write in response to your letter of today, addressed to Mr. Tutunjian and referring to your April 11 inquiry regarding the status of your lease agreement. The company is not sure of the cause of your confusion, given that you have been informed on multiple occasions that the lease has been terminated, and given that your deposit has been returned to you (the company sent it to you on August 29, after attempting to deliver it to you by hand, at your request, at the Boston Police hackney unit).

To the extent that you believe your April letter required a written response, please consider this letter as such.

Sincerely,

*Jenny K. Cooper*

Jenny K. Cooper

JKC/pjb

cc: Sgt. Fleming via email

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

gham McCutchen LLP
One Federal Street
ston, MA 02110-1726

T 617.951.8000
F 617.951.8736
bingham.com

COPY 10/28/2013

A/75772042.1

**Post Office Box 170151 ● Boston, Massachusetts 02117**



RECEIVED
U.S. ATTORNEY
BOSTON, MASS.

Oct 9  11 58 AM '13

FILE COPY

October 9, 2013

**HAND-DELIVERED**

**Carmen M. Ortiz, Esq.**
United States Department of Justice
United States Attorney's Office
District of Massachusetts
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

<div style="margin-left:2em">

Re:   Sherman Act, § 1
      ==Thirteenth & Fourteenth Amendments==
      Racial and National Origin Discrimination

</div>

Dear United States Attorney Ortiz:

Since Boston Police Department Rule 403 ("Rule 403") was illegally *adopted* August 29, 2008 the Boston Police Department Hackney Carriage Unit, in combination with ==E J T Management, Inc.==, has used Rule 403, with impunity, as an invidious tool with which to systematically violate the rights of the 6000 or so, mostly immigrant, licensed City of Boston Hackney Carriage Drivers.

This matter is urgently brought to your attention for an immediate and thorough examination by the United States Department of Justice under your stewardship.

Additionally, please find attached hereto a copy of an October 7, 2013 demand for a Moratorium on Rule 403. Thank you for your attention to this matter.

<div style="margin-left:50%">

Very truly yours,

STEVAN JOHNSON
City of Boston
Hackney Carriage Driver

</div>

Cc:    **VIA FACSIMILE**

**Jenny Kathleen Cooper, Esq.**
**BBO # 646860**
BINGHAM & MCCUTCHEN
1 Federal Street
Boston, Massachusetts 02110
Facsimile No.: 617.951.8736

Case 1:16-cr-10225-DPW ---- (11/21/2016)



COPY ⑦
11 OCT 13

Case 1:16-cr-10225-DPW --- (11/21/2016)

# E. J. T. MANAGEMENT, INC.

_11-18_ , 2013 २०११

**By Hand and Certified Mail**

Mr. Stevan Johnson
Post Office Box 170151
Boston, MA  02117

     Re:   Notice of Trespass

Dear Mr. Johnson,

     The purpose of this letter is to inform you that you are not permitted to be in or around the premises of EJT Management, Inc. located at (1) 60 Kilmarnock Street, Boston, Massachusetts; or at (2) Boston Cab Dispatch, Inc. located at 72 Kilmarnock Street, Boston, Massachusetts. If you are seen in or around 60 or 72 Kilmarnock Street in Boston, you will hereinafter be considered a trespasser in violation of G.L. c. 266, § 120, and we intend to report the trespass to the Boston Police Department. You will also receive a copy of this letter by certified mail.

     Sincerely,

Edward J. Tutunjian
President, EJT Management, Inc.
President, Boston Cab Dispatch, Inc.

cc:    Allison D. Burroughs, Esq.

2277648.1

60 KILMARNOCK STREET, BOSTON, MA 02215 • TEL: (617) 266-4700  FAX: (617) 266-4163

Case 1:16-cr-10225-DPW ---- (11/21/2016)



**Boston Police**
DEPARTMENT

One Schroeder Plaza, Boston, MA 02120-2014

November 20, 2013

Dear Mr. Johnson,

On September 1, 2013, you filed a complaint (#13-1526) with the Boston Police Hackney Carriage Unit. Sergeant Mark Fleming investigated this complaint and has sustained your allegation. Specifically, Mr. Jiaxiang Zhao, from whom you leased Boston Licensed Taxi #1215, overcharged you for your shifts. The estimate of that overcharge is $4,150.00. Mr. Zhao was also deficient in his record keeping as required by Rule 403. As a result, medallion #1215 will be suspended for five days. A two week additional suspension will be held in abeyance pending any resolution between yourself and Mr. Zhao regarding overcharges.

Captain Steven McLaughlin

Commander, Hackney Carriage Unit

EXHIBIT A



Case 1:16-cr-10225-DPW --- (11/21/2016)

January 6, 2015

Supreme Judicial Court
Clerk for the Commonwealth
John Adams Courthouse
One Pemberton Square, Suite 2500
Boston, MA 02108

RE:  *Sebago, et al. v. Tutunjian, et al.* SJC-11757

Dear Justices:

I write on behalf of the Boston Taxi Driver's Association (BTDA) to express the organization's support for the position espoused by the Plaintiffs in this case that taxi drivers should be granted employment status. The BTDA is the labor organization representing more than 1400 Boston taxi drivers. Founded in 2007 by the United Steelworkers and taxi drivers, the BTDA works for fairness, justice, and safety for Boston taxi drivers. We provide advocacy and direct representation to our members, defending and increasing their labor and legal rights and improving the industry for all. (However, because of the drivers' independent contractor classification, the BTDA does not have official recognition to represent the drivers as a union.)

The BTDA supports the Plaintiffs' claims in this case that cab drivers in the City of Boston have been misclassified as independent contractors in violation of the Independent Contractor Statute, M.G.L. ch. 149 § 148B. Cab drivers in the City of Boston are a hard-working, mostly immigrant workforce that struggle to make ends meet because of the current shift-based system, which requires drivers to pay over $100 per shift and cover the cost of their own gas and expenses. After paying these fees and costs, many drivers struggle to make a living while cab companies, like the Defendants in this case, profit spectacularly off of their work. The current system, in which drivers are misclassified as independent contractors, allows cab companies to collect their shift fees every day, while drivers must bear all the risk of low demand or failing to pick up enough fares. Shift drivers are exploited by being misclassified as independent contractors, and are being forced to work as urban sharecroppers, under a broken "pay to work" system. The facts of this case show the reality that cab drivers face:

---

**BOSTON TAXI DRIVERS ASSOCIATION**

520 Dorchester Avenue, South Boston, MA  02127  •  617-268-1171  •  617-268-1177 (Fax)  •  www.usw.org/BTDA  

- Costs of running a cab business are passed on to the driver, including:
    - A daily or weekly shift fee
    - An additional $18 "new car fee" per shift (which with the shift fee totals more than $100 for a 12-hour shift)
    - Credit card processing fees of 5% and 6%
    - Gas
    - Airport fees and tolls
- In addition to being charged these fees, drivers are even overcharged on shift fees and unable to complain because of fear of retaliation and losing a taxi, as documented by the Boston Globe in its Spotlight Team's investigative report, "Driven to the Edge,"
- Drivers must provide their own healthcare and receive no health or other employment benefits,
- Drivers are not guaranteed the minimum wage, nor are they paid overtime for their lengthy work weeks
- Drivers are excluded from most labor rights and protections.

If drivers were classified as employees, Defendants could no longer be indifferent to whether their cab drivers were actually making minimum wage or were working sixty and seventy hours a week without being paid overtime. They would not be allowed to charge them for work, and have no concern about whether there is enough business to support the fees and expenses drivers must pay, as provided for in the current system. Indeed, these changes are precisely why the Legislature passed the Independent Contractor Statute – to protect workers from the type of exploitation that cab drivers in Boston face every day.

Mass. Gen. L. ch. 149 §148B was intended to protect workers who perform services in the usual course of business of their employers. Here, there can be no doubt that cab drivers perform services for Defendants, where they drive Defendants' cabs, transport passengers who call or hail Defendants' cabs, and Defendants' earnings are entirely dependent on the drivers' labor (either directly or indirectly from the shift fees that drivers must pay to work, which they obtain from providing taxi services).

In short, if Boston taxi drivers were classified as employees, the standard of living would be raised for a whole class of working poor in Massachusetts. Taxi service would also improve as fleet owners would have to acknowledge they are in the taxi business, not the rental business, and would have more direct incentive to improve the quality of their service.

Thus, for all the reasons explained herein, the BTDA and its members urge this Court to hold that cab drivers are employees of the Defendants in this case as a matter of law.

Sincerely,

Donna Blythe-Shaw
USW/BTDA Staff Representative



DEPARTMENT                                    One Schroeder Plaza, Boston, MA 02120-2014

February 12, 2015

Stevan Johnson
Post Office Box 170151
Boston, MA 02117

Re:     Boston Taxi Owners Association et. al. v. City of Boston et. al.
        United States District Court, District of Massachusetts
        Civil Action No. 15-CV-10100-NMG

Dear Mr. Johnson:

Enclosed please find the following pleading filed today in the above-referenced matter:

    1.  Defendant City of Boston and Defendant William Evans' Memorandum of
        Law in Opposition to Motion for Leave to Intervene.

Thank you.

Sincerely,

Peter M. Geraghty
Staff Attorney
Office of the Legal Advisor

Enclosure

Case 1:16-cr-10225-DPW --- (11/21/2016)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 13-cv-10769-NMG

| | |
|---|---|
| BOSTON CAB DISPATCH, INC, <br> EJT MANAGEMENT, INC., <br> ANOUSH CAB, ARAMS INC., ARARRAT, INC. <br> ATLANTIC CAB, INC., BARLOW CAB, INC., <br> BEDROS CAB, INC., BOYLSTON CAB, INC., <br> BRIGHAM CAB, INC.,CLEVELAND CAB, INC., <br> DIAMOND CAB, INC., ELSIE CAB, INC., <br> FENWAY TAXI, INC., G & A CAB, INC., <br> JORDAN CAB, INC., JUBRAN CAB, INC., <br> KILMARNOCK CAB, INC., <br> LITTLE ISLAND CAB, INC., LOCUST CAB, INC., <br> LONGWOOD TAXI, INC., M & AN CABS, INC., <br> M.P.E. CAB, INC., MARBED CAB, INC., MASSIS, INC., <br> MESROB, INC., N.E. CAB, INC., ORIOLE CAB, INC., <br> PETERBOROUGH CAB, INC., <br> QUEENSBURY CAB, INC., SAHAG, INC., <br> SOVEREIGN CAB, INC., V&A CAB, INC., <br> VERAS, INC., VICKYS, INC., and <br> YELLOWBIRD CAB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## SECOND AMENDED COMPLAINT

The plaintiffs, Boston Cab Dispatch ("Boston Cab"), EJT Management ("EJT")

and thirty-four corporations that own 362 of the Boston taxi medallions managed by EJT

and dispatched by Boston Cab (collectively referred to as "plaintiffs") complain against

defendant Uber Technologies, Inc. ("Uber") as follows:

## INTRODUCTION

1

owning plaintiffs give it authority to seek legal protection of 362 medallion and taxi owners' rights against all forms of unfair competition.

4.  The thirty-four additional named plaintiffs are Massachusetts corporations with principal offices at 60 Kilmarnock St., Boston, Massachusetts. They collectively own a total of 362 City of Boston taxi medallions, as follows: Anoush Cab (7), Arams, Inc. (9), Ararrat, Inc. (10), Atlantic Cab, Inc. (17), Barlow Cab, Inc. (15), Bedros Cab, Inc (8), Boylston Cab, Inc. (5), Brigham Cab, Inc. (17), Cleveland Cab, Inc. (17), Diamond Cab, Inc. (8), Elsie, Inc. (8), Fenway Taxi, Inc. (8), G & A Cab, Inc. (7), Jordan Cab, Inc. (6), Jubran Cab, Inc (7), Kilmarnock Cab, Inc. (16) Little Island Cab, Inc (7), Locust, Inc. (5), Longwood Taxi, Inc. (6), M & An Cabs, Inc. (10), M P E, Inc. (11), Marbed, Inc. (8), Massis, Inc. (11), Mesrob, Inc. (11), N E, Inc. (12), Oriole Cab, Inc. (15), Peterborough Cab, Inc. (15), Queensbury Cab, Inc. (16), Sahag, Inc. (11), Sovereign Cab, Inc. (17), V & A, Inc. (10), Veras, Inc. (11), Vickys, Inc. (6), and Yellowbird Cab, Inc. (15).

5.  Plaintiff Boston Cab owns and is the exclusive licensee of all trademarks, trade names, trade dress and goodwill associated with Boston Cab operations in the City of Boston. Boston Cab has strong, distinctive, and recognizable trademarks, trade dress and trade names associated with its taxi services. Every Boston Cab Dispatch member cab is painted with distinctive "Boston Cab" logos and color schemes approved by the City of Boston.

6.  Defendant Uber is a Delaware corporation with principal offices at 800 Market Street, San Francisco, California. The Superior Court has personal jurisdiction over Uber, as Uber operates a transportation-for-hire service in the City of Boston and other

3

Case 1:16-cr-10225-DPW --- (11/21/2016)

**STEVAN JOHNSON**
Post Office Box 170151
Boston, Massachusetts 02117

<u>Via E-mail</u>

May 26, 2015

**Donna Blythe-Shaw**
BOSTON TAXI DRIVERS ASSOCIATION
520 Dorchester Avenue
South Boston, Massachusetts 02127
dshaw@usw.org; dbta@usw.org

Re:  <u>1400 *"Sharecroppers"*</u>

Dear Miss Donna:

This letter spawns from the reference to *"sharecroppers"* in your January 6, 2015 letter addressed to the Justices of the Supreme Judicial Court regarding SJC-11757. Historically, the term *sharecropper* has euphemized slavery. As a legal institution, slavery became unconstitutional December 6, 1865 upon ratification of the Thirteenth (13th) Amendment to the Constitution of the United States. Section 2 of the 13th Amendment vests the U.S. Congress with definitive power to eradicate the vestiges of *badges and incidents* of slavery "through appropriate legislation." Yet today, vestiges of this evil and dehumanizing institution <u>still</u> exist in the United States. In fact, vestiges of slavery currently plague Boston's taxi trade.

Your letter shows BTDA represents more than 1400 Boston taxi drivers. But, they are deprived of the right of official union recognition based on their *classification* as other than employees. Sadly, history shows us a direct correlation between the increased number of colored taxi drivers in Boston and them being summarily denied legal rights through loss of employee status based on their *classification*. Stripped of their legal rights, vulnerable taxi drivers are coerced to make a 'special contract' to divert revenue generated by credit card transactions in taxicabs. However, these transactions are merely shams designed to magically avoid paying a *free and clear* wage to Boston's taxi drivers. In short, the purpose of these sham transactions are to effectively conceal the true status of Boston's taxi drivers as employees entitled to the right to benefit from protection due under Massachusetts' Wage Act ("Wage Act"), M.G.L. c. 149, § 148.

It is quite evident the purpose of this end run around the Wage Act is to avoid payment of *free and clear wages* to Boston's taxi drivers because profits are derived from them performing <u>unpaid labor</u>. Consequently, the sham is clearly an invidious *incident* representative of a vestige of slavery that must be eradicated from the taxi trade in Boston.

Do not hesitate to help eradicate the 'special contract' plaguing at least 1400 Boston taxi drivers.

Sincerely,

STEVAN JOHNSON
city of Boston
Hackney Carriage Driver

Cc:  Boston Police Lieutenant Thomas Lema
thomas.lema@pd.boston.gov



# OFFICE OF THE CITY CLERK
*Maureen Feeney, City Clerk*

Case 1:16-cr-10225-DPW ---- (11/21/2016)

August 11, 2015

Stevan Johnson
Hackney Carriage Driver
beantownhack9312@yahoo.com

**RE: Public Records Request re: Clarification of 152 Suspensions of Boston Taxi Drivers based on Rule 403, Section 8**

Dear Mr. Johnson:

I am responding to your email inquiry dated August 10, 2015 relative to suspensions of Taxi Drivers in the City of Boston. The information you have requested is not in the custody of the City Clerk's Office. Therefore, your request has been forwarded to the Boston Police Department to respond to your request.

Kindly note that pursuant to the Massachusetts Public Records Law, the City follows a formula for the search, segregation, review and copying of each requested document. $0.20 per page is the allowed charge for photocopies of public records, $0.50 per standard page for computer printouts and there will be a per hour charge if needed relative to the processing time for the public records request based on the hourly wage of the employee capable of performing this task.

After completing its initial search for your requested records, the staff at the Boston Police Department will provide you with an estimate of the total cost of producing the documents you requested be it paper or electronic. To receive the documents, you will need to forward a check in the amount stated payable to the City of Boston.

Upon receipt of your payment, the Boston Police Department will forward to you the requested documents.

Very truly yours,

*Maureen Feeney*

Maureen Feeney
City Clerk

cc: Captain James Gaughan, BPD/Hackney Division

 

September 1, 2015

TO:        HACKNEY CARRIAGE OWNERS

FROM:   <mark>Lieutenant Thomas Lema</mark>
           <mark>Inspector of Carriages</mark>
           <mark>BPD Hackney Carriage Unit</mark>

RE:        2015 FALL HACKNEY CARRIAGE INSPECTION

The 2015 Fall Inspection Hackney Carriage Inspection will be from Monday, September 14th to Friday, October 30th, 2015. The inspections will take place from 8:30am to 2:00pm on a Monday – Friday schedule (no weekends). Enclosed is a copy of the inspection schedule for each medallion.

Each medallion is assigned a specific date for inspection and must appear on the assigned date. The Medallion Owner or his agent is responsible to present their vehicle to the inspectors in a clean condition and in compliance with all inspection standards.  Medallion Owners must notify any person who leases, manages or otherwise is in daily control of the vehicle about the inspection date assigned.

A three day suspension will be issued to any medallion owner who does not appear on the assigned date. Any vehicle which arrives after 2pm on the day of the assigned inspection will be in violation and also receive a three day suspension.

All taxis must have a properly operating receipt dispensing taximeter and credit card machine with a current seal from the City of Boston Weights & Measures Division.  Vehicles that are deemed as unfit will be taken out of service on the day of inspection. All vehicles must have the following documentation at inspection:

- An ORIGINAL Massachusetts Vehicle Registration.
- An ORIGINAL Hackney Carriage Set-up Card.
- All vehicle registrations must have a City of Boston Address.

*<mark>Shift Drivers cannot be charged for time spent at inspection</mark>. Charging a shift driver for time spent at inspection will result in a three-day medallion suspension.*

THE BOSTON POLICE HACKNEY CARRIAGE UNIT WILL NOTIFY RADIO ASSOCIATIONS IF AN INSPECTION DATE HAS BEEN CANCELLED.

Case 1:16-cr-10225-DPW --- (11/21/2016)

MA SOC   Filing Number: 201672069720   Date: 3/10/2016 12:28:00 PM



## The Commonwealth of Massachusetts
## William Francis Galvin

Minimum Fee: $100.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

### Annual Report
(General Laws, Chapter 156D, Section 16.22; 950 CMR 113.57)

Identification Number: __042906851__

1. Exact name of the corporation: __MASSIS, INC.__

2. Jurisdiction of Incorporation: State: __MA__   Country:

3,4. Street address of the corporation registered office in the commonwealth and the name of the registered agent at that office:

Name:          EDWARD J. TUTUNJIAN
No. and Street:   60 KILMARNOCK STREET
City or Town:   BOSTON        State: MA     Zip: 02115     Country: USA

5. Street address of the corporation's principal office:
No. and Street:   60 KILMARNOCK ST.
City or Town:   BOSTON        State: MA     Zip: 02...

6. Provide the name and addresses of the corporation's board of directors, secretary, and if different, its chief executive officer and chief financial...

| Title | Individual Name<br>First, Middle, Last, Suffix |
|---|---|
| PRESIDENT | MARY T TARPY |
| TREASURER | MARY T TARPY |
| SECRETARY | MARY T TARPY |
| DIRECTOR | MARY T TARPY |
| DIRECTOR | NANCY TUTUNJIAN |
| DIRECTOR | EDWARD J. TUTUNJIAN |

7. Briefly describe the business of the corporation:

TAXI CAB LEASES/RENTALS

8. Capital stock of each class and series:

| Class of Stock | Par Value Per Share<br>Enter 0 if no Par | Total Authorized by<br>of Organization or An... |
|---|---|---|

```
MASSIS CAB INC

Cab # 1319

05/05/16 TR 9709
START  END MILES
10:53 10:56  0.6
Fare:  $   5.00
Extra: $   0.00
Toll:  $   0.00
Srch:  $   0.00
TOTAL: $   5.00
TAXI HOTLINE
617-536-TAXI
EMAIL: TAXI.BPD@
```