UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | Criminal No:   16-10225-DPW |
| v. | ) ) ) |  |
| EDWARD J. TUTUNJIAN EJT MANAGEMENT, INC., | ) ) ) |  |
| Defendants. | ) |  |

## **SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States respectfully submits this supplemental sentencing memorandum in support of its position that the Bureau of Prisons (BOP) is equipped to care for Defendant Tutunjian's diabetes and hypertension if this Court imposes a term of incarceration as recommended by the government.

After Tutunjian filed his sentencing memorandum identifying specific concerns about the ability of the BOP to care for and monitor Tutunjian's medical issues, the government provided the BOP with the relevant pages of Tutunjian's PSR as well as the letters from Tutunjian's physicians, the Phillip S. Wise affidavit, and the DOJ-OIG report on medical staffing challenges at the BOP which were included with Tutunjian's sentencing memo. [Def. Mem.: Exs. 9, 10, 11 & 12].  After reviewing these materials, the BOP responded with a December 1, 2016, letter from Janet Bunts, Health Services Administrator, Northeast Region, addressing these issues ("Bunts Letter").  It is attached as Exhibit A.

Among other things, the Bunts Letter reports that there are extensive BOP protocols in place for the evaluation and treatment of both diabetes [Exhibit B] and hypertension [Exhibit C] [1] and that approximately 12,364 inmates in BOP custody have been diagnosed and are receiving treatment for some form of diabetes. [Bunts Letter at 2].[2]  Additionally, at least 3,746 of them have been issued a personal glucometer to monitor their blood sugar levels. *Id*. Treatment plans for diabetics are "individualized," have specific "measurable" goals, and stress "self-management" of their condition. *Id.* There also are regularly scheduled medical evaluations to monitor the inmate's condition. *Id*.

Both of Tutunjian's doctors advise that he has been able to manage his diabetes –his diabetes specialist describes it as "under excellent control" for the past 10 years–through a combination of medication, diet, and physical activity. [Def. Mem. Exs. 9 &10]. The materials provided by the BOP, and indeed, alluded to in his own submissions, demonstrate that the BOP and Tutunjian may continue to effectively control his diabetes while he is incarcerated, should this Court sentence him to a term of imprisonment.  To do so, Tutunjian will bear some responsibility for making good food choices, seeking out medical care as needed, and engaging in physical activity, just as he would if he was not incarcerated.  The BOP recognizes that "[i]nvolvement of the diabetic inmate in the development of the treatment plan is pivotal to its

---

[1] The "Management of Diabetes, Federal Bureau of Prisons Clinical Practice Guidelines, June 2012" and "Management of Hypertension, Federal Bureau of Prisons Clinical Practice Guidelines, May 18, 2015" are cited in the Bunts Letter and available online.  Copies of both are submitted with this memorandum for the Court's convenience.

[2] Diabetes is certainly a serious, but relatively common, disease, affecting more than 29 million American adults, with an additional 86 million American adults living with prediabetes. https://www.cdc.gov/chronicdisease/resources/publications/aag/pdf/2016/diabetes-aag.pdf.

success, including adequate training to empower the patient to prevent and treat hypoglycemia." [Ex. B at 4-5].  Among other things, the BOP's diabetes clinical guidelines emphasize the importance of physical activity and diet, recommend that inmates be counseled and educated on these topics, and include three handouts for inmates detailing information about diabetes, keys to controlling it and how to make good meal choices from the "heart health food options on the BOP National Menu."  [Ex. B at 5-6, 28, App. 10-12].   Wise acknowledges in his affidavit that although BOP has a master menu developed with a dietician and that inmates are provided information about the food choices at each meal in order to make healthy choices, "there is no enforcement of good dietary choice, and a wide variety of snack foods are available for purchase through the institution commissary, generally without medically based restrictions."  [Def. Mem. Ex. 11 at ¶ 10].   Of course, that is no different than if Tutunjian remains at liberty—there is presumably no "enforcement of good dietary choice" at his residence either.

Similarly, Tutunjian also will be medically screened at intake and during other examinations for hypertension and monitored for that condition, just as any other inmate would be, depending on that inmate's history, risk factors, symptoms and the like.  [Bunts Letter at 2; Ex. C at 2-5.]   As with diabetes, the BOP guidelines recommend that inmates be counseled and educated about hypertension, including the steps one may take, such as taking medication daily or controlling sodium intake, to help control that condition.  [Ex. C at 14 & App. 6.]

Tutunjian correctly notes that two of his medications are not on the BOP formulary. Contrary to Tutunjian's sentencing memorandum, however, that does not mean that the medications "would be unavailable for Mr. Tutunjian's treatment if a prison sentence is imposed." [Def. Mem. at 15].  As stated by the Bunts Letter, and acknowledged by Wise, either an equivalent medication would be prescribed or, where medically indicated, a non-formulary

3

request could be made.  [Bunts Letter at 3; Def. Mem. Ex. 11 at ¶ 8].   Nor is it true that Tutunjian would never be designated to a BOP Medical Center, such as Devens, as he claims.  [Def. Mem. 16, Ex. 11 at ¶ 7].   Although BOP's designation criteria would suggest that Tutunjian is a Care Level 2, as Wise states, and that a medical center designation would not be medically necessary, the Bunts Letter indicates that BOP also may consider available beds and the location of the inmate's legal residence in making a designation, which may include a medical center.  [Bunts Letter at 4]³.

As the materials make clear, the BOP hierarchy of medical classifications contemplates the imprisonment of inmates with conditions comparable to and, indeed much more serious than Tutunjian's, including inmates who require 24-hour skilled nursing care, quadriplegics, inmates suffering from congestive heart failure and end-stage liver disease, for example.  [Bunts Letter, Outline of BOP Care Levels; Def. Mem. Ex. 11 at ¶ 7].  Taken in context, Tutunjian's need for medication, for a proper diet, and exercise are not outside the range of admittedly serious issues that the BOP addresses throughout its system.

Tutunjian also argues that the BOP will not be able to meet his medical needs because of staffing challenges and Tutunjian's age, and cites two OIG reports on these topics.  The March 2016 report relating to medical staffing challenges is included as an exhibit to his sentencing memorandum [Def. Mem. Ex. 12] and the other May 2015/February 2016 report relating to an elderly inmate population is cited, but not attached.  [Def. Mem. Ex. 11 at ¶ 9].   For the Court's convenience, the government has included the second OIG report as Exhibit D.

---

³ The BOP does not pre-designate inmates without an opportunity to conduct a complete review of the inmates' medical records and PSR.

Of the ten recommendations the OIG made in the two reports, nine of them have been "resolved and closed." The tenth recommendation relating to modifications to the compassionate release program is in the process of being reviewed by the BOP. [Bunts Letter at 3; Def. Ex. 12 at 33; Ex. D at 63-66]. The resolutions include providing training to BOP staff to recognize signs of aging, including potential medical issues, which might to the untrained be viewed as behavioral issues, as well as addressing accessibility issues at its institutions. [Ex. D at 22-23, 51-52, 63-64.] Although the OIG reports identify various challenges or issues at the BOP, they also show that BOP is taking appropriate steps to address the concerns.

At bottom, the question is simply whether the BOP can properly care for Tutunjian's health care needs if he is incarcerated. The government submits that the answer is yes. Tutunjian has diabetes, which he has had since the mid-1990s, and hypertension. These are far from unique health issues and are ones that the BOP has experience in treating, extensive guidelines in place for doing so, and the ability to do so. Thus, for the reasons identified in the government's two sentencing memoranda as well as those to be argued at the sentencing hearing, the government will recommend that the Court sentence Tutunjian to a 24-month prison term.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Sandra S. Bower
SANDRA S. BOWER
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02110

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Sandra S. Bower
SANDRA S. BOWER
Assistant United States Attorney

Date: December 6, 2016