UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA         )
                                )
        v.                       )
                                )          Dkt. No. 16-CR-10225-DPW
EDWARD J. TUTUNJIAN              )
                                )
        &                        )
                                )
EJT MANAGEMENT, INC.            )
_____)

## EDWARD J. TUTUNJIAN'S REPLY MEMORANDUM CONCERNING SENTENCING

This memorandum responds to the government's December 6, 2016 submission

concerning Bureau of Prisons (BOP) healthcare that is pertinent to sentencing.

**I.      THE UNDISPUTED FACTS ESTABLISH THAT IMPRISONMENT WOULD CREATE A PROHIBITIVE LETHAL RISK AND ALMOST CERTAINLY HASTEN AND WORSEN MR. TUTUNJIAN'S DIABETIC COMPLICATIONS.**

The government does not dispute anything stated by the Joslin Clinic diabetes specialist,

Dr. Shanti S. Serdy, and Mr. Tutunjian's primary care physician, Dr. A. Donald Shusan.   Most

importantly, the government does not dispute Dr. Serdy's statements as follows:

1.   If the US Bureau of Prisons formulary precludes use of his current diabetes medications, necessitating a change in regimen, this could place Mr. Tutunjian at risk of hyperglycemia and hypoglycemia which could be potentially life-threatening, and almost certainly deleterious to his long-term glycemic control and risk of diabetes-related vascular complications.

2.   It is not assured that Mr. Tutunjian would be allowed to have a glucometer in prison, and lack of regular blood glucose monitoring increases the risk of severe hyperglycemia and hypoglycemia and above-noted complications.

3.   It is not assured that Mr. Tutunjian would have access to routine healthcare monitoring including regular assessment by a medical professional with expertise in the care of diabetes, and lab monitoring as per the American Diabetes Association recommended standards of care.

Doc. No. 26-10 at 3.  The government does not dispute Dr. Shushan's statement that stress and sleep disturbance would result in the secretion of the hormone, Cortisol, that, in turn, would raise havoc with Mr. Tutunjian's blood sugar levels. Doc. No. 26-9 at 1.

The government's submission affords this Court no assurance that the BOP will provide the non-formulary medications that are necessary to prevent a lethal risk, and the near certainty of loss of glycemic control resulting in further diabetes-related complications.  The court has no information about substitute medications that BOP might provide and when that would occur, if Mr. Tutunjian is imprisoned.  Vascular complications have recently begun in Mr. Tutunjian's eyes and feet, according to Dr. Shushan.  The risk posed by, at least, acceleration and worsening of these existing complications is not hypothetical.

II.     **THE GOVERNMENT'S SUBMISSION IS UNRESPONSIVE, VAGUE AND FAILS TO ESTABLISH THAT, IF IMPRISONED, MR. TUTUNJIAN WOULD BE PROVIDED WITH "NEEDED… MEDICAL CARE, OR CORRECTIONAL TREATMENT, *IN THE MOST EFFECTIVE MANNER,*" AS REQUIRED BY 18 U.S.C. § 3553(a)(2)(D).**

The government's claim that the BOP will provide the necessary health care to Mr. Tutunjian is not supported by evidence.  The government touts the BOP's guidelines for the care of diabetics and hypertension, but those guidelines were instituted in 2002 and 2005, respectively.  They were in place years before the 2008 Justice Department Office of Inspector General (OIG) Report finding very serious inadequacies in the BOP's actual healthcare performance.  Hence, guidelines are just that and no more.  Phillip Wise recounts that the 2008 report indicates that "in only 39% of the calendar quarters for which data were reported was the BOP able to achieve a very modest goal of having at least 65% of diagnosed diabetics with an A1C of 8% or lower."  Wise Dec. at ¶ 12; Doc. No. 26-11 at 7.  The A1C goal recommended by the American Diabetes Association Recommended Standards of Care is 7%.  See

http://care.diabetesjournals.org/content/suppl/2015/12/21/39.Supplement_1.DC2/2016-Standards-of-Care.pdf  at 48. The government claims that this diabetes finding and other OIG findings have been "resolved and closed."  This vague phrase often means nothing more than amendments to or the issuance of revised guidelines, revised memoranda, revised staff training, etc.  But the phrase, "resolved and closed" does not constitute evidence that the BOP has overcome its shortage of healthcare professionals or any of the other shortcomings described in the three OIG reports cited by Mr. Wise.[1]  The adverse findings reports are admissible evidence. The BOP's vague and self-serving statements that deficits in the quantity and quality of its healthcare have been "resolved and closed" falls far short of evidence that healthcare performance and care of elderly inmates has actually improved, much less that Mr. Tutunjian's serious illnesses will be treated "in the most effective manner," as required by 18 U.S.C. § 3553(a)(2)(D).

For example, the government's submission states accurately that self-care is essential for control of diabetes.  But, in the same submission, the government acknowledges that approximately 70% of BOP's diabetic inmates do not have access to a personal glucometer which Mr. Tutunjian's physicians say is required in order to self-monitor and control his blood sugar levels.   The government does not say what standards are used to determine whether

---

[1] An illustration of the actual performance of BOP health care is its failure to afford timely and effective care to Salvatore DiMasi.  No one knew Mr. DiMasi had cancer at his sentencing.  A month after commencing his sentence at the Federal Medical Center in Lexington, Kentucky in November 2011,  Mr. DiMasi noticed a large lump on his neck.  Even though he was living in a federal medical center, a month later Mr. DiMasi was finally seen by a physician's assistant at sick call.  Despite Mr. DiMasi's many efforts to have the lump diagnosed, no diagnostic procedure was performed until late April 2012. He did not receive chemotherapy for his metastasizing cancer until June 2012.  His condition has worsened ever since.   See Letter of Charles Rankin, Esq. in *United States v. Salvatore DiMasi*, Cr. No. 09-10166-MLW, Doc. No. 885-1 at 5-9.  As stated in our initial sentencing memorandum, we are not arguing that no seriously ill offender should be imprisoned.   Judge Wolf found that the loss caused by Mr. DiMasi's crimes was $17,000,000 for software that was not needed and not wanted by the Massachusetts government that Mr. DiMasi led.  None of that loss will ever be repaid. Mr. DiMasi's crimes were far more serious than Mr. Tutunjian's crimes.  Mr. Tutunjian has repaid multiples of the losses caused by his crimes.

Mr.Tutunjian would have a personal glucometer or assure this Court that Mr. Tutunjian would have one, and when he would receive it.

The government also says that the BOP's diet enables an inmate to eat foods that are diabetes-appropriate.  Such a diet must have sufficient vegetables and fruit and other low-carbohydrate foods.  The Fiscal Year 2017 BOP menu is attached hereto as Exhibit 1.  By examining the menu, the Court can readily observe the daily difficulty that diabetic inmates have in limiting their carbohydrate intake and yet having enough nutrients to maintain their health.  The BOP diet is part of the explanation for its failure to maintain non-demanding 8% A1C levels in thousands of diabetic inmates.

The government claims that Mr. Tutunjian may be placed in a federal medical center.  Undersigned counsel is informed that there are substantial waiting lists for admission to federal medical centers.  On December 8, 2016, we inquired of BOP's Regional Counsel, Michael Refelski, to try to obtain the number of inmates on such waiting lists.  Mr. Refelski replied that he does not have that information.  If he obtains such information and reports it to us, we will relate to the Court.

## III.    CONCLUSION.

When this Court weighs all of the § 3553(a) factors,  it should recognize that imposing a non-prison sentence in this case on a seriously ill and elderly Edward Tutunjian does not depreciate the seriousness of his crimes.  The government has not rebutted reliable medical evidence that interruption in the regimen of his healthcare creates a lethal risk and a near certainty that his serious diabetic complication will worsen more quickly.  There is evidence in the OIG reports that BOP healthcare would not be promptly responsive or effective when such events occur.  There is no serious doubt that such an interruption will occur if this Court imposes a prison sentence.  In the circumstances of these crimes and the characteristics of this offender, a

prison sentence would be unduly and unnecessarily disproportionate.  Mr. Tutunjian is elderly and suffers from serious illnesses that are life-threatening, if not treated in the most timely and effective manner.  A prison sentence constitutes a greater percentage of Mr. Tutunian's remaining life expectancy, when compared to younger and healthy offenders, and would impose more physical and emotional suffering on him than on others.  Such a sentence would be unduly harsh and unnecessarily jeopardize Mr. Tutunjian's life and fragile health.

Section 3553 mandates a parsimonious sentence.  The statute also requires consideration of alternatives to a prison sentence including community confinement, home confinement, fines, and appropriate conditions of probation, including community service and supervised release.  Are there no combinations of non-prison sentence terms that do not depreciate Mr. Tutunjian's crimes and adequately provide general deterrence, and which avoid physically harming Mr. Tutunjian?  The answer is no.  This Court can and should fashion a combination of sentencing terms that serve the purposes of sentencing without endangering Mr. Tutunjian's life or health.

 DATED:  December 9, 2016

Respectfully submitted,

/s/Andrew Good
Andrew Good
MA BBO #201240
ag@gscboston.com

/s/Philip G. Cormier
Philip G. Cormier
MA BBO #554515
pc@gscboston.com

Good Schneider Cormier
83 Atlantic Avenue
Boston, MA 02110
Tel. 617-523-5933
Fax. 617-523-7554

Counsel to Edward J. Tutunjian

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the within document on counsel of record via the ECF system.

Dated:  December 9, 2016                    */s/ Philip G. Cormier*
                                           Philip G. Cormier